IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HENRY COLTEN; ISLA RUTH WALKER; and JOHNNY COLTEN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. CIV-04-1678-C |
| STATE OF OKLAHOMA, EX REL. RICHARD SMOTHERMAN, District Attorney for the Twenty-Third Judicial District; THE BOARD OF COUNTY COMMISSIONERS of Lincoln County, State of Oklahoma; THOMAS MCNELLY, Sheriff of Lincoln County, Oklahoma; Deputy WELLS; Deputy BUTLER, and JOHN DOE(s), | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Motions for Summary Judgment of Defendants State of Oklahoma, *ex rel.* Richard Smotherman, Board of County Commissioners of Lincoln County, Thomas D. McNelly, Deputy Wells, and Deputy Butler. Plaintiffs filed a Response to each motion and each Defendant then filed a Reply. These matters are now at issue.

**I. BACKGROUND**

In the spring of 2004, arrest warrants were issued for a Floyd Colten and Taria Rankins. The warrants were served at the residences of Plaintiff Henry Colten and Isla Ruth Walker and Mr. Colten and Ms. Rankins were arrested pursuant to the warrants. On the same evening, some Defendants entered the property of Plaintiff Johnny Colten. That entry was limited to driving up the driveway, going onto the front porch, and knocking on the front door. Plaintiffs

filed the present action alleging Defendants committed the torts of false arrest, false imprisonment, assault, and trespass. Plaintiffs also allege that Defendants McNelly, Wells, and Butler violated their civil rights.

Defendants filed the present motions asserting the undisputed facts demonstrate no torts were committed and that there was no violation of Plaintiffs' civil rights. In the alternative, Defendants McNelly, Wells, and Butler argue they are entitled to qualified immunity as to Plaintiffs' civil rights claim.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials

include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. DISCUSSION

**A. State Law Claims**

According to Plaintiffs, Defendant State of Oklahoma, *ex rel*. Richard Smotherman, ("State"), Defendant Board of County Commissioners, and Defendant Thomas D. McNelly are liable for the torts of false arrest, false imprisonment, and assault. Defendants[1] argue Plaintiffs' claims are foreclosed by the provisions of the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. §§ 151, *et seq.* ("OGTCA"). In support of their position, Defendants rely on § 155 of the OGTCA, arguing there is no liability under the OGTCA for actions that are judicial, quasi-judicial, or prosecutorial, or for execution or enforcement of lawful orders of any court or entry onto property where the entry is expressly authorized by law. Plaintiffs argue § 155 is not applicable because the actions of which they complain do not come within the scope of the statute.

---

[1] As used in relation to Plaintiffs' state law based claim, the term Defendants means State, Board, and McNelly.

The Court finds the service of the warrants constituted the "execution of lawful orders of any court" and therefore Defendants are immune from liability under the OGTCA. The undisputed facts are that entry was made onto Plaintiffs' respective properties for the purpose of serving valid arrest warrants. It is further undisputed that the alleged wrongs about which Plaintiffs complain occurred during the execution of those warrants. Plaintiffs' argument is that the manner in which the warrants were served was improper, therefore they were not lawful and the OGTCA exemption cannot apply. In support of their position, Plaintiffs direct the Court to 22 Okla. Stat. §§ 192 and 1228.

Section 192 states: "[t]he officer must inform the defendant that he acts under the authority of the warrant, and must also show the warrant within a reasonable time under the circumstances, if requested." Plaintiffs argue they were never shown an arrest warrant; therefore, the execution of the warrants was improper. Plaintiffs' arguments must fail for two reasons. First, neither Plaintiff was a "defendant" in relation to the arrest warrant. Thus, by its very language, the statute does not apply. Second, Plaintiffs never indicate they asked to see the warrant. Thus, there is no showing § 192 applies in this case and Plaintiffs' argument – that the failure to comply with that statute precludes application of exemption found at 51 Okla. Stat. § 155 – must therefore fail.

Plaintiffs also assert that 22 Okla. Stat. § 1228 renders the manner in which the warrants were served unlawful. In relevant part, that statute states: "A peace officer may break open an outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant when: 1. The officer has been refused admittance after having first given

notice of his authority and purpose . . . ." Plaintiffs argue the officers never identified themselves as police and therefore the service of the warrant was improper. Once again, the statute relied on by Plaintiffs does not apply. It is clear from the deposition testimony of each Plaintiff that the officers knocked on the door of their respective homes and then waited until they were granted entry. There is no evidence demonstrating the officers broke open a door, window, or any other portion of Plaintiffs' homes to gain entry. Further, the deposition testimony does not support Plaintiffs' arguments that the police failed to announce themselves. Rather, it is at best unclear on the issue. Plaintiff Colten testifies at one point that the officers did not announce themselves, at another point that he knew when he saw them who they were, and at another that he knew it was the police all along. Regardless of when he knew the persons were police, it is clear that Plaintiff Colten voluntarily admitted the officers into his home. Plaintiff Walker's testimony is likewise unhelpful on the issue as she testified her grandson opened the door and she doesn't know what was said at that time. Because the undisputed facts establish the officer did not make a forced entry into either Plaintiff's home, § 1228 has no applicability and the warrants were valid. Accordingly, Defendants are exempt from liability on Plaintiffs' state law claims pursuant to 51 Okla. Stat. § 155.

Even if the OGTCA did not preclude Plaintiffs' claims, the undisputed facts fail to demonstrate a tort occurred. Plaintiffs argue they were subject to false arrest and/or false imprisonment, that Defendants trespassed on their property and that they were assaulted.[2]

---

[2] In its Motion for Summary Judgment, Defendant State asserted as undisputed the fact that Plaintiff Johnny Colten was not present at his home when the individual Defendants allegedly came onto his property. Defendant State also asserts that Plaintiff Johnny Colten admits that Defendant

**1.  False Arrest/False Imprisonment**

The Oklahoma Supreme Court has made clear that the only distinction between false imprisonment and false arrest is the nature of the person doing the detaining.  If that person is purportedly acting with the authority of law, the tort is false arrest, otherwise, it is false imprisonment.  See Alsup v. Skaggs Drug Center, 1949 OK 136, ¶ 7, 223 P.2d 530, 533.  Here, Plaintiffs allege they were improperly detained by law enforcement personnel.  Accordingly, Plaintiffs' claims are properly analyzed as false arrest claims.  See Delong v. State ex rel. Oklahoma Dept. of Public Safety, 1998 OK CIV APP 32, ¶ 4, 956 P.2d 937, 938.

> False arrest has been defined as "an unlawful restraint of an individual's personal liberty or freedom of locomotion . . . .  An arrest without proper legal authority is a false arrest and because an arrest restrains the liberty of a person it is also a false imprisonment."  Black's Law Dictionary (5th Ed. 1979).

Roberts v. Goodner's Wholesale Foods, Inc., 2002 OK CIV APP 73, ¶ 6, 50 P.3d 1149, 1151-52.  Here, the undisputed facts establish there was no unlawful restraint.  As noted above, it is undisputed that the officers were executing valid arrest warrants when they entered the Plaintiffs' homes.  It is also clear that the manner in which those warrants were served was proper. Both Plaintiffs, when asked, stated they were not arrested.  Rather, Plaintiffs contend the mere presence of the officers in their home restrained them.  However, the facts set out in the evidentiary materials before the Court do not support this argument.

---

Gaylord did not assault him and that no Defendant falsely imprisoned or arrested him.  No Plaintiff disputes these assertions of fact.  Accordingly, the Court finds that to the extent Johnny Colten pled claims for assault, false arrest, or imprisonment, those claims fail as a matter of law.

Plaintiff Colten testified that while the officers were in his home he realized his grandson was outside, and that he got up, went outside and got his grandson, and then came back into the house. Although an officer followed him, Plaintiff Colten admitted there was no attempt to stop him.

Plaintiff Walker admitted that she did not try to leave and had no reason to try to leave. However, another member of the household left Plaintiff Walker's home to get a pair of shoes from a truck. Although the person was accompanied by an officer, there was no attempt to prevent his departure. In short, the undisputed fact demonstrate that Plaintiffs were not restrained and that even if they were such detention was lawful.

**2. Assault**

Plaintiffs assert that the presence of the officers in their homes with weapons drawn caused them to be fearful and therefore constitutes an assault. Defendants direct the Court to 21 Okla. Stat. § 643[3] which, in pertinent part, states:

> To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases:
>
> 1. When necessarily committed by a public officer in the performance of any legal duty, or by any other person assisting such officer or acting by such officer's direction;

---

[3] Although found in the criminal law portion of Oklahoma's statutes, this statute has been repeatedly applied by Oklahoma Courts in civil cases. See, e.g., Boston v. Muncy, 1951 OK 175, 233 P.2d 300.

As noted herein, when the officers made entry into the Plaintiffs' homes with guns drawn, they were in the performance of a legal duty. Thus, there can be no assault as a matter of Oklahoma law.

Even setting § 643 aside, under Oklahoma law to establish a claim for assault a plaintiff must prove "[Defendant] acted either with the intent of making a [harmful/offensive] contact with the person of [Plaintiff], or with the intent of putting [Plaintiff] in apprehension of such a contact . . . ." OUJI-Civ. 2d No. 19.1. The undisputed facts make clear that none of the officers intended to make contact with Plaintiffs or cause Plaintiffs to be fearful of such contact. Rather, the officers acted with the intent to ensure their safety when they executed a lawful arrest warrant.

### 3. Trespass

Plaintiffs[4] do not directly respond to Defendants' challenge to their trespass claims in their response brief. In the deposition testimony, Plaintiffs appear to assert that the officer's mere presence on their property constituted a trespass. Plaintiffs' arguments fail as a matter of law. A police office may enter upon the "public" portions of private property, (driveways, sidewalks, front porches) when engaged in the performance of official duties and such an entry is not a trespass. See United States v. Hatfield, 333 F.3d 1189, 1194 (10th Cir. 2003), and Schindelar v. Michaud, 411 F.2d 80, 82-83 (10th Cir. 1969); see also Payton v. New York, 445 U.S. 573 (1980) (noting police executing an arrest warrant have the right to enter a private residence if they reasonably believe the suspect is present therein). Defendants note their entry

---

[4] Within the context of the trespass claim, Plaintiffs include Johnny Colten.

onto Johnny Colten's property was to investigate an odor of natural gas. Ensuring public safety is a part of the official duties of a law enforcement officer. When viewed in the light most favorable to Plaintiffs, the entry onto Johnny Colten's property was limited to entering the driveway and knocking on the front door. Thus, the officers' actions cannot be a trespass and Plaintiffs' claims fail as a matter of law.

### 4.  19 Okla. Stat. § 547

Plaintiffs allege that Defendant McNelly may be held liable pursuant to 19 Okla. Stat. § 547 for the acts of his deputies. In relevant part that statute states: "The sheriff shall be responsible for the official acts of the undersheriff and deputy sheriffs . . . ." As the Court has found no actionable wrongdoing on the part of the deputies there can be no liability for Defendant McNelly under this statute.

## B.  Civil Rights Claims

Plaintiffs raise constitutional claims only against Defendants McNelly, Wells, and Butler (Civil Rights Defendants). According to Plaintiffs, these Defendants violated their civil rights by participating in an unlawful search and/or by failing to intervene when other officers were violating Plaintiffs' civil rights.

As noted above, it is clear the entry onto each Plaintiffs' property was lawful. Thus, there can be no civil rights claim from that act. Although not clearly asserted in Plaintiffs' briefs as a claim, within the depositions Plaintiffs complain that while the officers were in their homes to serve the arrest warrant, they engaged in an illegal search. Plaintiffs assert the officers were looking in areas too small to secrete a person and therefore the search could not

be properly related to the execution of the search warrant. Even assuming Plaintiffs' assertions state a claim, that claim must fail as there is no evidence the Civil Rights Defendants personally participated in the search. The Civil Rights Defendants assert as undisputed that they never entered or searched any buildings on any Plaintiffs' property. Plaintiffs do not dispute these statements in their LCvR56.1(c) statement of disputed facts and none of the evidentiary materials offered by Plaintiffs refute these assertions. Accordingly, they will be deemed admitted. The failure to demonstrate the Civil Rights Defendants participated in the allegedly unconstitutional search is fatal to Plaintiffs' claim as personal participation is a requirement for 42 U.S.C. § 1983 liability. See Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."); see also Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996) (finding plaintiff's failure to name guards who actually beat him or allege the personal participation of those who were named as defendants required his § 1983 claim be dismissed for failure to state a claim for relief).

The fact that none of the Civil Rights Defendants were present inside any building on Plaintiffs' property is also fatal to Plaintiffs' claim that the failure to intervene violated their constitutional rights. In support of their claim, Plaintiffs state the following in their brief:

> Thus, an officer who is present but fails to intervene to prevent another law enforcement official from infringing a person's constitutional rights is liable *if the officer had reason to know* that any constitutional violation has been committed by a law enforcement official, *and the officer had a realistic opportunity to intervene* to prevent the harm from occurring. Yang v. Hardin, 37 F.3d 282, 283 (7th Cir.[] 1994); Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)[;] Reid v. Wren, 57 F.3d 1081, 1082 (10th Cir. 1995).

Response Brief, (Dkt No. 78) p. 21 (emphasis added). It is clear from the emphasized language that before liability can attach there must be an opportunity for knowledge and an opportunity to intervene. Because the Civil Rights Defendants were outside, no reasonable jury could find either element had been met. Accordingly, Plaintiffs' claims for failure to intervene must fail.

Plaintiffs argue that because an unnamed deputy participated in the search of their homes, Defendant McNelly may be held liable for any constitutional violations by that deputy. Plaintiffs' assertion is without merit. As an initial matter, Plaintiffs offer no evidence the unnamed deputy was a member of Defendant McNelly's staff. That issue aside, there is no vicarious or respondeat superior liability in a claim pursuant to 42 U.S.C. § 1983.

> In order to impose supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." [Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996).] Rather, "the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights. A plaintiff may satisfy this standard by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." Id. at 994-95.

Beedle v. Wilson, 422 F.3d 1059, 1074 (10th Cir. 2005). Here, Plaintiffs have failed to refute Defendant McNelly's evidence and argument demonstrating he did not supervise the deputy or have actual knowledge the deputy was engaged in an unlawful search. Thus, Plaintiffs' claims must fail.

### IV.  CONCLUSION

As set forth more fully herein, the undisputed material facts demonstrate Defendants are entitled to judgment. Accordingly, Defendant State of Oklahoma's Motion for Summary

Judgment (Dkt. No. 73); Defendant Board of County Commissioners of Lincoln County's Motion for Summary Judgment (Dkt. No. 67); Defendant Thomas D. McNelly's Motion for Summary Judgment (Dkt. No. 65); Defendant Deputy Wells' Motion for Summary Judgment (Dkt. No. 69); and Defendant Deputy Butler's Motion for Summary Judgment (Dkt. No. 71) are GRANTED. A separate judgment will issue. All other pending motions are STRICKEN as moot.

IT IS SO ORDERED this 25th day of January, 2006.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge

*[signature]*
ROBIN J. CAUTHRON
United States District Judge